IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RUTH NORAEEN ANDREWS,  )<br>  )<br>  Plaintiff,  )<br>  )<br>v.  )<br>  )<br>CBOCS WEST, INC., and J.J. STEWART,  )<br>  )<br>  Defendants.  )<br>  ) | NO. 09-CV-1025-WDS |

# MEMORANDUM & ORDER

**STIEHL, District Judge:**

This matter is before the Court on defendant CBOCS West, Inc.'s ("Cracker Barrel") motion for summary judgment (Doc. 57) to which plaintiff has filed a response (Doc. 67) and defendant a reply (Doc. 68). Plaintiff worked as a server at Cracker Barrel's restaurant in Caseyville, Illinois, from 1999 to December 21, 2007. Plaintiff alleges that in January of 2008, defendant Tremayne Stewart (incorrectly named in the case as "J.J. Stewart"), fired plaintiff in 2007 in retaliation for the fact that she had filed a gender discrimination and retaliation case under Title VII in 2002. That case settled in 2003.

**I.   BACKGROUND**

The Court will review the facts in the light most favorable to the plaintiff, *Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012). Plaintiff, who is Caucasian, asserts that the defendants discriminated against her, and that the actions which led to this lawsuit began in 2003 and ran through the time of her termination, in January of 2009. Plaintiff and another employee had filed a Title VII action in 2002. Plaintiff alleges that in 2003 Stewart (who was then an associate

manager) threatened her (while her first Title VII suit was pending) that if he were to become a general manager he would immediately fire her. She alleges that in mid-2003 he said, "You better hope to God I never become GM because if I do, one of the first things I'm going to do is fire you. . ." (Plaintiff Depo. At 65). Plaintiff asserts that Stewart, who is African American, stated on two occasions in 2007 that it was his "plan" to make the Caseyville Cracker Barrel the first "all-black" restaurant in the chain (*Id.* at 69.) As General Manager, Stewart hired more than 50% of African American new hires (*Id*. at 75.) She alleges that he assigned more tables to black servers than to white servers and favored younger workers, would give black workers more and better table assignments, and from 2007 on whenever she worked with him, he would refer to her as the "little old lady," or "old woman." (*Id.* at 76.) She acknowledges that he did not take any benefits, pay or hours away from her at this time. (*Id.* at 79.)

     Plaintiff alleges that she complained to Stewart about his inappropriate references to her age in work situations, and he responded by laughing it off. She also complained to other managers about his conduct and asked for an appointment with the Employee Training Coordinator, but that never transpired. In July of 2007, plaintiff complained to an Employee Relations Specialist, Beverly Cooper (*Id.* at 85), and although plaintiff asserts that she followed Cooper's directions (to take notes of events, send notes to supervisors, etc.), no action was taken to remedy the situation. She would take notes after each shift and then transcribe the notes when she got home (Id. at 95-96). She acknowledges that her hourly pay rate was not cut by Stewart, nor were her work hours cut during his tenure as General Manager (*Id.* at 91).

     Plaintiff asserts that in the Fall of 2007, she asked for a transfer to the Mount Vernon Cracker Barrel (*Id.* at 146) and Stewart agreed to the transfer. Stewart agreed to talk to "Lisa" at Mount

Vernon and told plaintiff that there were "no available hours" but he would call her. (*Id.* at 150). Plaintiff announced to her coworkers that her last day was December 21, 2007, and would be taking her vacation from that point on. Plaintiff asserts that she called the Mount Vernon store several times, but never spoke with Lisa or any of the managers at that store and did not leave a message. (*Id.* at 150-51).

Plaintiff alleges that in November of 2007 she re-sent a letter to Cooper, complaining of discrimination, retaliation and harassment. She did not speak to any of the managers at Mount Vernon between December 21, 2007 (her last day of work at Caseyville) and her termination. In fact, the record reveals that she not speak to any of the management team at Mount Vernon until August of 2010 (*Id*. at 151). Despite this she stated that she believed she had a transfer to Mount Vernon, but was never given a start date nor did she know the hours she would be working when she left. (*Id*. at 152). She spoke to Stewart a couple of times while she was on vacation. She stated that by at least December 10, 2007, she knew that the only available hours at Mount Vernon were Friday and Saturday, but she wanted hours during the week and did not want the weekend hours. (*Id*. at 154).

After she left for vacation, she did not call the Caseyville store to receive any start dates or work hours and did not return to the Caseyville store. After failing to come to work for three weeks, plaintiff was administratively discharged, but it was noted that she was eligible for rehire. Cracker Barrel sent plaintiff a letter detailing the administrative termination and paying her for her remaining vacation pay. After receiving that letter, plaintiff did not call or show up for work at either the Caseyville Store or the Mount Vernon Store. Plaintiff states in her deposition that she never worked at any Cracker Barrel other than Casyeville (*Id*. at 31);

3

Plaintiff seeks recovery in this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §1983 and the Age Discrimination in Employment Act. Her complaint is framed in five counts. Count I alleges Title VII Retaliation, Count II alleges Title VII Race Discrimination, Count III alleges a second claim of Title VII Retaliation, Count IV seeks recovery under 42 U.S.C. §1981 for Race Discrimination, and Count V alleges violations of the Age Discrimination in Employment Act.

## II.  ANALYSIS

### A.  Race Discrimination Claims

Title VII "forbids an employer from discharging or demoting an individual on account of race or national origin. Title VII also prohibits retaliation for protesting employment discrimination and other unlawful practices under the statute." *Naficy v. Illinois Dep't of Human Serv.*, 2012 WL 4070115, *3 (7th Cir. Sept. 18, 2012).

Plaintiff may proceed on her discrimination claims under either the direct or indirect, burden-shifting methods of proof set forth in *McDonnell Douglas v. Green*, 411 U.S. 792 (1972). To withstand summary judgment using the direct method "a plaintiff must marshal sufficient evidence, either direct or circumstantial, that an adverse employment action was motivated by discriminatory animus." *Naficy*, at *4. Further, the "relevant question under the direct method is whether the evidence 'points directly' to a discriminatory motive for the employer's decision." *Id.* Direct evidence "usually requires an admission from the decisionmaker about his discriminatory animus, which is rare indeed." *Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1114 (7th Cir. 2009). "Circumstantial evidence may be sufficient to make out a direct claim of discrimination when the plaintiff presents enough evidence to allow a reasonable factfinder to conclude that the adverse

employment action was taken as a result of the plaintiff's race. . ." *Naficy,* at *4.

With respect to her claims of discrimination, plaintiff asserts that Steward had stated that he intended to make the Caseyville store all black; and that he pressured plaintiff to transfer to Mount Vernon, then administratively discharged her. (Plaintiff depo. at 163). Plaintiff's separation from Cracker Barrel was effective January 11, 2008, three weeks after her last day of work.

Although plaintiff has set forth inappropriate behavior by Stewart, and little response by Cracker Barrel management to her complaints, the evidence is insufficient to support her claims of discrimination because she has not established that she suffered adverse employment actions as a result of these actions. Cracker Barrel provided a clear, nondiscriminatory reason for her termination. She left the Caseyville store on vacation and never returned. Her discharge was subject to rehire, but not until 2010 (after this legal action was filed) did she seek re-employment. There is nothing to establish that the reason she was discharged was pretextual. *See, Montgomery v. Am. Airlines, Inc.,* 626 F.3d 382, 396-97 (7th Cir. 2010).

Her belief that she had a job at Mount Vernon is belied by the fact that she never was given hours there, did not speak to the manager at that store and apparently did not even go to that store to inquire about her employment. There is nothing that "points directly" to a discriminatory motive for her discharge, nor any sustainable evidence through the indirect method to support a claim of racial discrimination. Accordingly, the Court **FINDS** that summary judgment is appropriate on her claims of discrimination.

    **B.**    **Retaliation Claims**

To support a claim for retaliation plaintiff has to show that her protected action, in this case the filing of her 2002 Title VII claim, was "a substantial motivating factor" in an adverse

employment decision. *Leitgen v. Fransciscan Skemp Healthcare, Inc.,* 630 F.3d 668, 675 (7th Cir. 2011). Although Stewart made statements relating to the 2002 action, plaintiff admits that she did not suffer any adverse employment actions. She was not demoted, did not receive a cut in pay and did not have her hours reduced by Stewart. The fact that she was discharged was not "temporally related" or proximate at all to the statements by Stewart. *See, Hoppe v. Lewis University*, 2012 WL 3764717 *8 (7th Cir. Aug. 31, 2012). Plaintiff simply has offered no evidence to link Stewart's comments to her discharge, and without a showing of an adverse employment action there is no link between her 2002 Title VII filing and her ultimate discharge in 2008. That discharge was, as the record shows, based upon her failure to return to work at the end of her vacation period, and nothing more. Accordingly the Court **FINDS** that summary judgment is appropriate on plaintiff's claims of retaliation.

### C. Age Discrimination Claim

To support a claim of age discrimination in violation of the Age Discrimination Act (ADEA), 28 U.S.C. §621 *et seq*., plaintiff may proceed on either the direct or indirect methods of proof. *Szymanski v. Cnty. of Cook*, 468 F.3d 1027, 1029 (7th Cir. 2006). Using the direct method of proof, a plaintiff must show: "(1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between the two." *Smith v. Lafayette Bank & Trust Co.,* 674 F. 3d 655, 657 (7th Cir. 2012); *see also, Everroad v. Scott Truck Sys., Inc*., 604 F.3d 471, 481 (7th Cir. 2010). If she seeks to proceed under the indirect method of proof, plaintiff must show: "(1) she engaged in statutorily protected activity; (2) she met the employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity." *Smith*, 674

F.3d at 657-58 (*citing Kodl v. Bd. of Educ. Sch. Dist. 45, Villa Park*, 490 F.3d 558, 562 (7th Cir. 2007)). Under either method, plaintiff must prove that she engaged in statutorily protected activity. Although plaintiff allegedly told Stewart that he should not make references to her age, there is nothing that establishes that any adverse employment action was related to age discrimination. Therefore, the plaintiff cannot sustain a claim for Age Discrimination, and summary judgment is appropriate on this claim.

### III. CONCLUSION

Accordingly, the Court **FINDS** that defendant CBOCS West, Inc. is entitled to summary judgment, and summary judgment is entered in favor of defendant CBOCS West, Inc., and against plaintiff, Ruth Noraeen Andrews, on all claims raised. The Court **FURTHER FINDS** that plaintiff cannot sustain her claims against defendant Tremayne Stewart (incorrectly named in the case as "J.J. Stewart"), who has not been served in this case, and those claims are **DISMISSED with prejudice.**

The Clerk of the Court shall enter judgment accordingly.

**IT IS SO ORDERED.**

**DATE: 26 September, 2012**

                                                        **/s/ WILLIAM D. STIEHL**
                                                           **DISTRICT JUDGE**